## David E. Grady, Appellee, v. Grand Trunk Western Railway Company et al., Appellants.

## Gen. No. 15,513.

1. REMITTITURS—*when not confession of excessiveness of verdict.* A *remittitur* essential to bring the amount of recovery within the *ad damnum* is not to be construed as a confession of the excessiveness of the verdict rendered.

2. VERDICTS—*when excessiveness not apparently the result of prejudice, etc.* Held, under the evidence, which showed a fracture of the skull, a concussion of the brain and a serious scalp wound with resulting infection and a disturbed mental condition, that a verdict for $5,000 could not be said to be so plainly the result of passion and prejudice as to require that it be set aside.

3. CONTRIBUTORY NEGLIGENCE—*failure to look and listen.* "It is not the law of this State that the omission of a person to look and listen as he approaches a railroad crossing will bar a right of recovery in case of a collision resulting in injury, if the circumstances surrounding the accident are such as will excuse the person injured from a failure to look and listen."

4. TRIAL—*when conduct of counsel will not reverse.* Questions asked and answered indignantly in the negative will not be assumed to have been asked solely for the purpose of prejudicing the jury. Much must be left to the ethics of counsel subject to the supervisory power of the trial judge who has the opportunity of observation to prevent abuses.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. ARTHUR H. CHETLAIN, Judge, presiding. Heard in this court at the March term, 1909. Affirmed. Opinion filed March 16, 1911. Rehearing denied March 27, 1911. *Certiorari* denied by Supreme Court (making opinion final).

KRETZINGER, ROONEY & KRETZINGER, for appellants.

QUIN O'BRIEN and LAWRENCE W. POTTER, for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

This is an appeal from a judgment of the Superior Court of Cook county for $1,995, in favor of one David

E. Grady against the two railroad corporations which are appellants,—the Grand Trunk Western Railway Company and the Chicago & Western Indiana Railroad Company. The judgment was rendered on the verdict of a jury in a suit for personal injuries suffered by the plaintiff Grady through being run down by a detached locomotive engine belonging to and operated by the Grand Trunk Western Railway Company. He was struck by it as he was crossing on a grade crossing at 31st street in Chicago the tracks belonging to the Chicago & Western Indiana Railroad Company, on which the Grand Trunk Co. runs its trains.

The *ad damnum* of the declaration in said case was $1,995, undoubtedly placed at no higher figure, as is stated by the appellee's counsel in argument, to prevent the removal of the cause by the defendants to a Federal Court. The jury returned a verdict of $5,000 damages and a *remittitur* was entered by the plaintiff of $3,005 to reduce the verdict to the amount of the *ad damnum*, after which a new trial was denied and judgment entered on the verdict against the two appellants, the suit being dismissed as to a third corporation—the Pennsylvania Company—which also had tracks at this street crossing, and had been made an original defendant and included in the verdict. No question is made as to the liability of both appellants if the liability exists at all. It is, however, assigned for error and argued that the evidence showed no negligence on the part of the defendants or their servants, and that it showed contributory negligence at least on the part of the plaintiff, and consequently that no liability existed on the part of either defendant.

It is further insisted that the trial court erred in giving certain instructions at the request of the plaintiff, that the counsel for plaintiff was guilty of improper conduct during the trial, to the prejudice of the defendants, and that the verdict was so excessive

as to show passion and prejudice on the part of the jury. It is said that a verdict which was the result of passion and prejudice cannot be cured by a *remittitur,* and also that even after the *remittitur* the amount awarded is excessive. For these various reasons appellants say the judgment should be reversed with a finding of facts, or at least reversed with a remandment of the cause for another trial.

In disposing of the question raised as to the excessiveness of the verdict first, it is to be noted that the *remittitur* can in no sense be taken as an admission by the appellee that the verdict was excessive. It was necessary, in order to bring the judgment within the limits of the *ad damnum.* The question is, therefore, whether the evidence taken together leaves it plain that the verdict of $5,000 for the plaintiff could not have been arrived at by the jury had they not been swayed by passion or prejudice.

We do not think that it does. If the defendants were liable they were liable to the full extent of the plaintiff's injuries, except so far as the plaintiff himself put a limit on the possible recovery by his statement of the *ad damnum.* As to what the extent of the injuries was, the evidence was conflicting. There is no doubt that the plaintiff sustained a fracture of the skull, a concussion of the brain and a serious scalp wound. The scalp wound was infected and the patient developed a fever therefrom. Counsel for appellants say in their argument that the infection was due to an admitted previous syphilitic condition of the blood of the plaintiff, but that is not the evidence. The attending physician expressly negatived this theory and said the infection was the result of bacteria introduced from outside by that which struck his head.

The plaintiff, however, introduced evidence showing that he had since the accident mental trouble and a season of actual insanity with clouded consciousness, in which he had been sent to an asylum for the insane.

Testimony also was given that the mental trouble was all subsequent to the accident and began immediately after it, although the insanity did not intervene for a year and a half. The testimony of the plaintiff's attendant physician and surgeon, although by no means particularly definite on the subject, not only tended to prove as an immediate result of the accident a seriously disturbed mental condition, but also included an opinion as an expert that there was a connection between the injury and the subsequent period of insanity. Another physician of expert and special knowledge in psychology, whose thorough education, high standing and wide experience seem to be unimpeachable, and certainly were not impeached, testified in reply to a hypothetical question (which added to a statement of the case which the evidence for the plaintiff tended to prove, all the factors relied on by the defendants as indicating another sole producing cause for the insanity), that in his opinion "the mental abnormality described in the hypothetical case was caused by the injury or traumatism from the accident set forth" in the question. Three other physicians, however, skilled and expert in the subject, of equally high standing and qualifications, gave their expert opinion in answer to a hypothetical question involving practically the identical hypothesis. They testified that in their opinion the insanity had no connection with the injury, but was caused by the syphilitic condition of the plaintiff. A fourth, who had actual observation of and contact with the plaintiff at the Elgin asylum for the insane and there had medically treated him, testified to the same effect. It was his opinion that the insanity of the plaintiff was due to syphilis. When treating the plaintiff he had arrived at that conclusion, knowing nothing of any injury to the head which the plaintiff had suffered.

Thus, although the number of experts who supported the theory of the defendants as to the cause of

the plaintiff's insanity was the larger, it was between disagreeing doctors, apparently equally competent, that the jury were called on to decide, and we cannot say in this matter of expert testimony that a verdict based on the opinion given by the smaller number is manifestly against the weight of the evidence for that reason. To do so would take away from the jury a necessary part of their function. It is for them to judge whose opinion is most valuable. To hold that disparity in the numbers of expert medical witnesses for the respective parties decided the question of the weight of "opinion evidence" would be highly dangerous. No other rule, therefore, can generally be adopted than to leave to the jury the choice between two such conflicting opinions. Therefore we do not think that this judgment should be disturbed on account of the size of the verdict.

It is unnecessary for us to enter into any extended discussion of the conflicting evidence which bears on the negligence of the defendants alleged by the plaintiff, and the contributory negligence of the plaintiff charged by the defendants. The rule of law in Illinois is plain that the existence of such primary negligence and the existence of contributory negligence were both matters of fact for the jury to decide, unless one or the other or both were so clearly proven or disproven that no reasonable minds could come to different conclusions.

This is not the case here. The evidence concerning the defendants' negligence is conflicting, but preponderates in favor of the plaintiff.

Viewed in the light of all the evidence which the jury had before them on the subject of the character of the engine which inflicted the injury and the crossing where it occurred, the presence or absence of signals and lights, and the existence and situation of the gates at the time, the question of contributory negligence was also for the jury. "A failure to look and listen cannot be said to be negligence as a matter

of law, since there may be many circumstances excusing such failure." Dukeman v. C. C. C. & St. Louis R. R. Co., 237 Ill. 104.

"It is not the law of this state that the omission of a person to look and listen as he approaches a railroad crossing will bar a right of recovery in case of a collision resulting in injury, if the circumstances surrounding the accident are such as will excuse the person injured from a failure to look and listen." Henry v. C. C. C. & St. L. Ry. Co., 236 Ill. 219.

The instructions complained of by the defendants contain no reversible error, in our opinion. Nor can we hold that certain questions complained of, put by the counsel for plaintiff to witnesses for the defendants, were, in the absence of any objection to them by the defendants, ground for action on our part reversing this judgment.

Counsel for defendants say, with truth, that where the plain and obvious intent of questions is not to elicit facts, but to prejudice the jury, the conduct of counsel in asking them is reprehensible and unprofessional; but this court cannot assume, in any case, that particular questions were asked with such an intent, even though the answers indignantly negatived the suggestions of the questions. Much must therefore be left to the professional ethics of counsel and the observation of the trial judge.

We do not think there is anything in this record calling for our interference.

The judgment of the Superior Court is affirmed.

*Affirmed.*